**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**TEXAS ONE SOURCE INDUSTRIAL SOLUTIONS LLC, THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF TEXAS ONE SOURCE INDUSTRIAL SOLUTIONS, LLC;**

***Plaintiff*,**

**v.**

**EULER HERMES NORTH AMERICAN INSURANCE COMPANY,**

***Defendant*.**

**Case No. 5:25-CV-00832-JKP**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Counter-Defendant Texas One Source Industrial Solutions LLC's ("TOS") Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 18*). In the Motion, TOS moves to dismiss the Counterclaim filed by Counter-Plaintiff Euler Hermes North American Insurance Company ("Euler"). *Id.*; *see also ECF No. 9* (Euler's First Amended Answer, Affirmative Defenses, and Counterclaim). Euler filed a Response, (*ECF No. 26*), to which TOS filed a Reply, (*ECF No. 31*). The Motion is therefore ripe for ruling. Upon consideration, TOS's Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 18*), will be denied.

## BACKGROUND

### I. TOS's Original Complaint

Plaintiff (and Counter-Defendant for purposes of the instant Motion to Dismiss) Texas One Source Industrial Solutions LLC ("TOS") alleges in its Original Complaint that:

5. This action arises under the Miller Act, 40 U.S.C. §§ 3131–3134, concerning labor and materials furnished for the improvement of a federal construction project known as the San Antonio, Texas Veterans Affairs Medical Center Electronic Health Record Modernization Project (the "Project"), located in San Antonio, Bexar County, Texas.

6. The United States, through the Department of Veterans Affairs, was the owner of the Project. ESA South, Inc. ("ESA South") served as the prime contractor on the Project and furnished a payment bond (Bond No. US3003695) pursuant to the Miller Act, issued by Euler Hermes [("Euler")] as surety.

7. ESA South entered into a subcontract agreement with Citizen Contracting Group, LLC ("CCG"), under which CCG was to perform certain portions of the work on the Project, including electrical scope work.

8. Texas One Source (["TOS")] entered into a subcontract agreement with CCG, making TOS a second-tier subcontractor on the Project. Under that agreement, TOS furnished labor, materials, and equipment for the electrical scope of work throughout the Project, including the ground floor, levels 1 through 7, and the data center.

9. TOS provided labor and materials in prosecution of the work as provided in its subcontract. TOS performed its work in good faith, and the materials acquired and/or furnished by TOS were intended for or otherwise incorporated into the Project.

10. On February 10, 2025, ESA South terminated the subcontract with CCG. As a direct consequence of that termination, TOS's subcontract with CCG was also effectively terminated, despite no fault or breach on the part of TOS.

11. At the time of this termination, TOS had submitted invoices for completed work and delivered materials that remained unpaid. In addition, TOS had placed purchase orders for long-lead electrical items intended for installation on the Project. These materials had been ordered in reliance on the approved Project scope and schedule. All of the materials were purchased for the direct prosecution of the work, and have been delivered to the site or have been suitably stored offsite.

12. The termination rendered the long-lead material orders the contractual responsibility of TOS despite not receiving payment for the materials. In an effort to mitigate its damages, TOS contacted ESA South about a potential agreement for ESA South to acquire the materials directly from TOS, including the long-lead materials and material orders that had been received and suitably stored off-site. ESA South declined to acquire the long-lead materials.

13. Consequently, TOS was left with materials intended for the Project under a subcontract that has been terminated through no fault of TOS. As a result, TOS

> incurred significant costs and fees, which are now included in the total balance owed under its Miller Act claim.
>
> 14. As of the date of this Complaint, TOS is owed **$1,710,679.40** for labor, materials, earned retainage, and costs.
>
> . . .
>
> 18. Despite repeated demands, no payment has been made. TOS seeks to recover from the payment bond the full amount owed for the work it performed and materials it supplied on the Project.

*ECF No. 1* at 2–5. Based on these allegations, TOS asserts a sole cause of action against Euler pursuant to provisions of the Miller Act, 40 U.S.C. §§ 3131–3134. *Id.* at 5–6. For reference, a visual representation of the relationships between the parties is depicted immediately below.




## II. Euler's Counterclaim

In response to TOS's Original Complaint, Euler filed its Counterclaim, (*ECF No. 9*). Euler alleges in its Counterclaim that:

> 13. Following CCG's termination, ESA South Inc. hired another subcontractor ("Replacement Subcontractor") to complete the CCG Scope. In connection with doing so, ESA South Inc. investigated the status of the CCG Scope, including the work performed by TOS under the TOS Agreement, to confirm the completion percentages stated by CCG in its payment applications to ESA South Inc., evaluate the quality and conformity of the work to Project plans and specifications, inventory the materials and equipment reported by CCG and/or TOS as located on

> the Project site, and, based on its investigation, develop a reasonable cost estimate for completing the unfinished CCG Scope.
>
> 14. ESA South Inc. determined that most of the work performed under the CCG Subcontract, mainly consisting of work performed by TOS under the TOS Agreement, was improperly installed, had damaged other work and/or in repairing or replacing the improperly installed work would require destruction or demolition of the work of other trades and, in general, did not conform to the requirements of the contract documents and Project plans and specifications. The VA, after conducting its own inspection of the CCG Scope, rejected most of the work as improper and/or non-conforming. ESA South Inc. estimates that 85% or more of the CCG Scope will have to be reworked or replaced. The estimated cost of reworking or replacing the CCG Scope – in addition to the cost of completing the unfinished portion – is over $1M.
>
> 15. In addition, through its investigation, ESA South Inc. discovered that CCG and TOS had exaggerated in their payment applications the percentage of the CCG Scope each had completed. Thus, not only was ESA South Inc. misled into paying CCG more than it was entitled to receive based on the actual – not represented – percentage of work completed, but also the cost of completing the CCG Scope was greater than ESA South Inc. had anticipated based on CCG's representations in the payment applications submitted to ESA South Inc..
>
> 16. The combination of improper and non-conforming work installed by CCG and TOS, misrepresentations made to ESA South Inc. about the percentage of the CCG Scope completed on the Project, maladministration and delays in performing the CCG Scope – by CCG under the CCG Subcontract and TOS under the TOS Agreement – have caused ESA South Inc. to incur substantial damages, including, without limitation, repair and replacement costs, increased completion costs, delay damages, and extended field and home office overhead that have adversely and financially impacted ESA South Inc.'s business operations.
>
> 17. ESA South Inc. will continue to incur damage caused by the acts and omissions of CCG and TOS until the Project is completed and accepted by the VA. Thus, as of the time of filing this Complaint, the full extent of the damage caused by CCG and TOS to ESA South Inc. on the Project cannot be known.

*ECF No. 9* at 9–10. Based on these allegations, Euler asserts a cause of action against Citizen Contracting Group ("CCG") for breach of contract and asserts two causes of action against TOS for (1) negligence and (2) negligent misrepresentation. *Id*. at 11–12.

## III. Instant Motion to Dismiss

In the instant Motion to Dismiss, TOS moves to dismiss the two causes of action Euler

asserts against TOS for (1) negligence and (2) negligent misrepresentation. *ECF No. 9* at 11–12. Euler filed a Response, (*ECF No. 26*), to which TOS filed a Reply, (*ECF No. 31*). The Motion is therefore ripe for ruling.

**LEGAL STANDARD**

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to

in the pleadings and are central to a plaintiff's claims. *Id*. When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

**ANALYSIS**

TOS argues the economic loss rule precludes Euler's causes of action for negligence and negligent misrepresentation. *ECF No. 18* at 4–8. Alternatively, specifically regarding Euler's cause of action for negligent misrepresentation, TOS argues Euler fails to state a claim. *Id*. at 8–11.

## I. Negligence

### A. Economic Loss Rule

As described by a Texas appellate court:

> The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). . . . But the rule does not bar all claims arising out of a contractual setting. *Chapman Custom Homes*, 445 S.W.3d at 718. As the [Texas] [S]upreme [C]ourt has said, "a party [cannot] avoid tort liability to the world simply by entering into a contract with one party [otherwise the] economic loss rule [would] swallow all claims between contractual and commercial strangers." *Id.* (quoting *Sharyland*, 354 S.W.3d at 419). **Thus, a party states a noncontractual claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit.** *Id.*
>
> In *Chapman Custom Homes*, the Texas Supreme Court recognized that "a common law duty to perform with care and skill accompanies every contract and . . . the failure to meet this implied standard might provide a basis for recovery in tort, contract, or both under appropriate circumstances." *Id.* (citing *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 510 (1947)). For example, in that case, a plumber who installed a plumbing system in a house being built assumed an implied duty not to flood or otherwise damage the home. *Id.* That duty was independent of any obligation in the plumber's subcontract with the builder, and the alleged damages caused by the breach of that duty extended beyond the

> economic loss of any anticipated benefit under the plumbing contract. *Id.* at 718–19. Thus, the economic loss rule did not apply.

*Hilburn v. Storage Tr. Properties, LP*, 586 S.W.3d 501, 507–508 (Tex. App.—Hous. [14th Dist.] 2019) (emphasis added).

In this case, contrary to TOS's claims, Euler states in its Counterclaim that TOS allegedly breached a duty "independent of the contractual undertaking and [that] the harm suffered is not merely the economic loss of a contractual benefit," as required. *Id.* at 507; *see also Rio Grande City Consol. Indep. Sch. Dist. v. Puentes*, No. 13-19-00033-CV, 2020 WL 6878736 at *3–4 (Tex. App.—Corpus Christi Nov. 24, 2020).

### 1. Independent Duty

The distinction between violating a contractual duty and violating the common law duty of due care is illustrated by *Montgomery Ward & Co. v. Scharrenbeck,* 204 S.W.2d 508 (Tex. 1947). In *Scharrenbeck,* the defendant was hired to repair a water heater in plaintiff's attic. *Id.* at 508–09. When the heater subsequently malfunctioned and ignited the roof, destroying the house and its contents, the plaintiff sued in tort. *Id.* at 509. The Texas Supreme Court held the defendant's negligence in repairing the heater gave rise to a tort claim despite the contractual context, noting that "[a] contract may create the state of things which furnishes the occasion of a tort." *Id.* at 510.

The Texas Supreme Court later summarized and reaffirmed the rationale of *Scharrenbeck*, stating:

> Although the contract obligated the defendant to put the water heater back in good working order, the law also implied a duty to the defendant to act with reasonable skill and diligence in making the repairs so as not to injure a person or property by his performance. In failing to repair the water heater properly, the defendant breached its contract. In burning down plaintiff's home, the defendant breached a common[]law duty as well, thereby providing a basis for plaintiff's recovery in tort.

*Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *see also Thomson v. Espey Huston & Associates, Inc.*, 899 S.W.2d 415, 421 (Tex. App.—Austin 1995, no writ).

Here, regarding duty, Euler alleges in its Counterclaim that TOS owed it "a duty to perform its work in a good and workmanlike manner according to industry standard, the requirements of the TOS Agreement, and Project plans, specifications, and other requirements." *ECF No. 9* at 11. The Court accepts these allegations as encompassing the "common law duty to perform with care and skill [that] accompanies every contract." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citing *Scharrenbeck*, 204 S.W.2d at 510). The failure to meet this implied standard might provide a basis for recovery in tort, contract, or both under appropriate circumstances. *Id.* (citing *Coulson v. Lake L.B.J. Mun. Util. Dist.,* 734 S.W.2d 649, 651 (Tex. 1987)); *Espey*, 899 S.W.2d at 420–22. Thus, the Court finds Euler states in its Counterclaim that TOS allegedly breached a duty independent of the contractual undertaking**.**

**2. Independent Damages**

Texas courts have consistently held that "economic loss" is defined as "damages for inadequate value, costs of repair [] and replacement of the defective product [, or consequent loss of profits—] without any claim of personal injury or damage to other property."[1]

Here, as to damages, Euler alleges in its Counterclaim that:

> [ESA South] determined that most of the work performed under the CCG Subcontract, mainly consisting of work performed by TOS under the TOS Agreement, was improperly installed, had damaged *other work* and/or in repairing or replacing the improperly installed work would require destruction or demolition of the

[1] *In re Stillwater Abbott Dev., LLC*, 672 B.R. 305, 378 (Bankr. N.D. Tex. 2025), *amended on reconsideration in part*, No. 24-30097, 2026 WL 1278182 (Bankr. N.D. Tex. May 8, 2026) (cleaned up) (citing *Bass v. City of Dallas*, 34 S.W.3d 1, 9 (Tex. App.—Amarillo 2000, no pet.)); *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415, 420–22 (Tex. App.—Austin 1995, no writ)); *James v. Bell Helicopter Co.*, 715 F.2d 166, 173 (5th Cir. 1983); *Paradyme Asset Mgt., LLC v. Figurd, LLC*, No. 5:24-CV-00737, 2025 WL 515319 at *3 (W.D. Tex. Jan. 20, 2025).

> work of other trades and, in general, did not conform to the requirements of the contract documents and Project Plans and specifications.

*ECF No. 9* at 9–10 (emphasis added). The Court notes after filing its Counterclaim Euler filed a Notice, attaching three exhibits to its Counterclaim. *See ECF Nos. 14, 14-1, 14-2, 14-3*. These exhibits appear to be agreements and contracts between the various parties.

In TOS's Motion to Dismiss it does not cite any portion or provisions of the agreements and contracts relating to Euler's cause of action for negligence, stating only in a conclusory fashion that "[t]he damages that Euler [] seeks for the negligence claim are the subject matter of the contracts themselves on the Project." *ECF No. 18* at 7. Generally, if resolution of a motion to dismiss turns on a factual dispute, it is more appropriately resolved on summary judgment or at trial. *See, e.g., McLin v. Ard*, 866 F.3d 682, 690 n.2 (5th Cir. 2017); *Kitt v. Bailey*, No. CIV.A. H-14-0368, 2015 WL 1729882, at *7 (S.D. Tex. Apr. 10, 2015). At present, it is unclear what types of damages are included in Euler's allegations that, through improperly installed work, TOS "damaged *other work*."[2] *ECF No. 9* at 9. If portions or provisions of the agreements and contracts speak to how these damages are allocated between TOS and Euler, it is counsel's work to present such arguments, with specificity, to the Court.[3] Thus, while not entirely clear at this stage of the proceedings, the Court finds that to the extent Euler states in its Counterclaim

[2] The Court acknowledges TOS's citation to *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234 (Tex. 2014) in support of dismissal. However, at this time, it is unclear whether the damages described by Euler fall under Texas courts' unique definition of "economic loss," as TOS does not address the definition. *Id*. at 248; *In re Stillwater Abbott Dev., LLC*, 672 B.R. 305, 378 (Bankr. N.D. Tex. 2025), *amended on reconsideration in part*, No. 24-30097, 2026 WL 1278182 (Bankr. N.D. Tex. May 8, 2026) (citing *Bass*, 34 S.W.3d at 9); *Espey*, 899 S.W.2d at 420–22; *Bell Helicopter Co.*, 715 F.2d at 173 (5th Cir. 1983); *Paradyme*, 2025 WL 515319 at *3. Further, TOS does not adequately brief how Euler, as surety, qualifies as a "participant" on a construction project that "cannot recover from another [participant] for economic loss caused by negligence." *LAN/STV*, 435 S.W.3d at 246. For example, Euler is not alleged to be the general contractor or a subcontractor. If Euler is asserting rights in place of the general contractor, and on that basis this cause of action would be barred, TOS has not addressed such an argument and provided no legal authority.

[3] TOS does address a provision relating to overpayment when discussing Euler's cause of action for negligent misrepresentation, but TOS (1) does not connect its argument to Euler's cause of action for negligence and (2) does not address the alleged damages that may fall outside of the scope of the agreements and contracts, under Texas courts' unique definition of "economic loss," and whether or not they also are covered. *ECF No. 18* at 11.

the harm it suffered is not merely the economic loss of a contractual benefit, Euler states a claim.[4]

Accordingly, at this juncture, the Court finds Euler has sufficiently plead its cause of action against TOS for negligence. Thus, in this regard, TOS's Motion to Dismiss, (*ECF No. 18*), is denied.

## II. Negligent Misrepresentation

TOS also argues the economic loss rule precludes Euler's cause of action for negligent misrepresentation. *ECF No. 18* at 9–11. Alternatively, TOS argues Euler fails to state a claim. *Id.*

### A. Economic Loss Rule

As described by a Texas appellate court:

> [T]he Texas Supreme Court [has stated] "damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for *the pecuniary loss to him of which the misrepresentation is a legal cause,*" including
>
> (a) The difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>
> (b) *pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.*
>
> *Sloane,* 825 S.W.2d at 442 (emphasis added) (quoting Restatement (Second) of Torts § 552B (1977)); *see D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex.1998) (discussing *Sloane*'s adoption of section 552B). **The damages recoverable for a negligent misrepresentation do not include the benefit of the bargain of a plaintiff's contract with a defendant.** *Sloane,* 825 S.W.2d at 442 (quoting Restatement (Second) of Torts § 552B (1977)). **Rather, "[u]nder the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim**." *See Sterling Chems., Inc. v.*

[4] *Rio Grande City Consol. Indep. Sch. Dist. v. Puentes*, No. 13-19-00033-CV, 2020 WL 6878736 at *3–4 (Tex. App.—Corpus Christi Nov. 24, 2020) (quoting *Espey*, 899 S.W.2d at 421–22 ("If Thomson were merely complaining that the drainage system was inadequate and that he had been forced to repair or improve it, he would have only a contractual claim . . . However, to the extent that the alleged inadequacies caused damage to parts of the property beyond Espey's contract, Thomson also has a tort claim.")).

> *Texaco, Inc.,* 259 S.W.3d 793, 797 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) (citing *D.S.A., Inc.,* 973 S.W.2d at 664).
>
> Moreover, this Court has held that benefit-of-the-bargain damages are not recoverable for negligent misrepresentation even when there is no privity of contract between the plaintiff and the defendant. *See Sterling Chems., Inc.,* 259 S.W.3d at 796–98. In *Sterling,* a chemical manufacturer, Sterling, contracted with a construction firm to, using proprietary gasification technology owned by Texaco, build a facility to produce synthetic gas. 259 S.W.3d at 795. Sterling alleged that it, in entering the contract with the construction firm, relied upon representations made by Texaco about its technology, even though Texaco was not a party to the contract. *Id.* When the completed facility did not produce synthetic gas as anticipated, Sterling sued Texaco for negligent misrepresentation, seeking damages for its "lost sales and profits." *Id.* at 796, 798. This Court, applying the economic-loss rule, affirmed the trial court's summary judgment in favor of Texaco. *Id.* at 800.
>
> Under the economic-loss rule, a duty in tort does not lie when the only injury claimed is one for economic damage recoverable under a breach-of-contract claim. *Id.* at 796. Accordingly, when a plaintiff seeks to recover for only the loss or damage to the subject matter of a contract, the plaintiff cannot maintain a tort action against the defendant. *Id.* at 796–98 (citing *DeLanney,* 809 S.W.2d at 494). Because Sterling's claims for "lost sales and profits" were for its "benefit-of-the-bargain" of its contract with the construction firm, we held that Sterling could not recover damages from Texaco for negligent misrepresentation. *Id.* at 797–98, 800 (quoting Restatement (Second) of Torts § 552B (1977)); *see D.S.A., Inc.,* 973 S.W.2d at 664. In *Sterling,* we emphasized that reliance damages, in contrast to benefit-of-the-bargain damages, are "measured as the *out-of-pocket* expenditures made by one party in reliance on the actions of another party, not by the amount of lost profits and sales." 259 S.W.3d at 798.

*CCE, Inc. v. PBS & J Const. Services, Inc.*, 461 S.W.3d 542, 549–50 (Tex. App.—Hous. [1st Dist.] 2011) (emphasis added).

The Fifth Circuit applied the economic loss rule to negligent misrepresentation claims in *Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016), because, in tallying damages, the plaintiff alleged no damages independent from those resulting from the breach of contract. *Id*. at 526. In reaching its decision, the Fifth Circuit cited to *TIB-The Independent BankersBank v. Canyon Community Bank*, 13 F.Supp.3d 661 (N.D. Tex. 2014), a case in which a district court *did* find the plaintiff alleged damages independent from those resulting from the breach of contract. *Ibe*, 836 F.3d at

526 (citing *TIB*, 13 F. Supp.3d at 671). In *TIB*, the district court reported, "Texas courts have held that where a plaintiff seeks to recover out-of-pocket expenses incurred in reliance on the defendant's misrepresentation, the plaintiff 'establish[es] an injury that is independent of its breach of contract claim.'" *TIB*, 13 F. Supp.3d at 671 (citing *LAN*, 350 S.W.3d at 688). The district court went on to rule that because the plaintiff sought to recover out-of-pocket expenses incurred with having to repurchase a loan, it sufficiently alleged an injury independent from the economic loss of the subject matter of the agreement (i.e., the loan). *Id*. The district court noted its ruling was based on the pleadings and indicated nothing about how a summary judgment ruling might be resolved. *Id.* at 671 n.7.

In TOS's Motion to Dismiss, TOS does not address the above-mentioned caselaw, but instead argues that "[b]ecause [the] alleged losses arise entirely from the contractual arrangements between [the] parties to [the] construction contract, the negligent misrepresentation claim is barred by the economic loss rule." *ECF No. 18* at 11. As described, however, a plaintiff may assert a negligent misrepresentation cause of action if it seeks reliance damages as measured by its out-of-pocket expenditures and consequential losses, and not damages for the benefit of its bargain on a contract as measured by any lost sales or profits. *CCE,* 461 S.W.3d at 549–50 (emphasis added).

In its Counterclaim, Euler does not seek damages for the benefit of its bargain, as measured by any lost sales or profits, through its cause of action for negligent misrepresentation against TOS. It appears that is what Euler is suing Defendant CCG for through its cause of action for breach of contract against CCG.[5] Instead, Euler is suing TOS for its alleged negligent misrepresentations that led to Euler's overpayment of TOS's work.[6,7]

[5] Euler's cause of action against CCG for breach of contract is based on CCG "failing to: (i) perform the CCG Scope in accordance with the requirements of the CCG Subcontract and Project plans and specifications; (ii) correct defec-

At bottom, while TOS provides some citations to contract provisions, TOS does not *adequately* brief how the alleged overpayments are covered by those contract provisions. [8,9]

Again, *see infra n.2*, to the extent TOS relies on *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234 (Tex. 2014), TOS also does not *adequately* brief how Euler, as surety, qualifies as a "participant" on a construction project that "cannot recover from another [participant] for economic loss caused by negligence." *LAN/STV*, 435 S.W.3d at 246. For example, Euler is not alleged to be the general contractor or a subcontractor. If Euler is asserting rights in place of the general contractor, and on that basis this cause of action would be barred, TOS has not addressed such an argument and provided no legal authority.

Accordingly, at this early stage of the proceedings, the Court finds that the injuries alleged for Euler's cause of action of negligent misrepresentation against TOS are claimed to be "distinct, separate, and independent" from the injuries alleged for Euler's cause of action for breach of contract against Defendant CCG. *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d

tive and/or non conforming work; (iii) maintain the Project schedule; (iv) man the Project with properly qualified and experienced workers; (v) obtain performance and payment bonds covering the CCG Scope; (vi) oversee, inspect, and confirm the type and quality of the work performed by TOS; and (vii) pay TOS for its work on the Project." *ECF No. 9* at 11. For this, Euler seeks damages in an amount exceeding $1,000,000. *Id.*

6 Euler's cause of action against TOS for negligent misrepresentation is based on TOS' alleged false representations "to CCG about the percentage of the total TOS Scope it had completed [] in connection its monthly payment applications to CCG." *ECF No. 9* at 12. CCG, in turn, incorporated them into CCG's own payment applications. *Id*. For this, ESA South overpaid CCG for TOS's work on the Project, for which amount Euler sues TOS. *Id.*

7 *CCE, Inc. v. PBS & J Const. Services, Inc.*, 461 S.W.3d 542, 551 (Tex. App.—Hous. [1st Dist.] 2011) (The damages CCE sought were reimbursement for expenses "over and above what it would have cost CCE" to complete the project itself. Further, the court of appeals concluded those damages constituted "reliance damages as measured by [CCE's] out-of-pocket expenditures and consequential losses, not damages for the benefit of its bargain on its contract with TxDOT as measured by any lost sales or profits.").

8 *See Kinder Morgan Treating LP v. N. Park Advantage Walden MRU, LLC*, No. 05-24-01447-CV, 2026 WL 1897810, at 12 (Tex. App.—Dallas July 1, 2026) ("Thus, merely because a plaintiff suing for negligence or negligent misrepresentation opts to sue for reliance damages does not mean that such damages are not, in essence, "contract" damages or that those damages constitute an independent injury. *See Sealy Emerg. Room, L.L.C. v. Free Standing Emerg. Room Mgrs. of Am., L.L.C.*, No. 01-21-00008-CV, 2024 WL 3973428, at *11 (Tex. App.—Houston [1st Dist.] Aug. 29, 2024, no pet.) (rejecting argument the economic loss rule did not bar plaintiffs' negligence claim seeking reliance rather than expectancy damages because reliance damages are a measure of contract damages.").").

9 TOS also does not move for dismissal based upon a lack of independent duty in regard to this cause of action, contrary to its arguments relating to Euler's negligence cause of action.

793, 797 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). If, as the case progresses, TOS believes it can show the damages alleged under the breach of contract cause of action and the negligent misrepresentation cause of action are the same, it can, of course, move for summary judgment based on the economic loss rule. *Petro-Hunt, L.L.C. v. Williams-S. Co., L.L.C.*, No. 3:13-CV-01588, 2016 WL 6806312, at *8 (N.D. Tex. Jan. 6, 2016), *aff'd*, 668 Fed. Appx. 126 (5th Cir. 2016) (unpublished). Thus, in this regard, TOS's Motion to Dismiss, (*ECF No. 18*), is also denied.

**B. Failure to State A Claim**

Finally, TOS argues Euler fails to establish the first and fourth elements of a negligent misrepresentation cause of action, "namely that: (1) TOS made any representation in the course of its business, or in a transaction in which it has a pecuniary interest and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *ECF No. 18* at 11.

Texas has long recognized a cause of action for the tort of negligent misrepresentation, or negligently supplying information for the guidance of others, in which a plaintiff must prove that:

> (1) a defendant, in the course of its business or in a transaction in which it had a pecuniary interest, made a representation,
>
> (2) the defendant supplied "false information" for the guidance of another in the other's business,
>
> (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and
>
> (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*See Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (citing Restatement (Second) of Torts § 552(1) (1977)). In Euler's Counterclaim, Euler alleges that:

> 26. During its performance of the TOS Scope, TOS gave information and made representations to CCG about the percentage of the total TOS Scope it had completed ("TOS Completion Percentages") in connection with its monthly payment applications to CCG. CCG, in turn, communicated to Principal the TOS Completion Percentages it received from TOS, incorporating them into CCG's own payment applications to Principal.
>
> 27. The TOS Completion Percentages were false. In fact, TOS had not completed the percentage of the TOS Scope reflected by the TOS Completion Percentages submitted by TOS to CCG for payment. TOS knew and furnished the false TOS Completion Percentages to CCG knowing that CCG would incorporate them into CCG's payment applications to Principal and that Principal would rely on the false TOS Completion Percentages supplied by TOS in paying CCG for TOS's work included in CCG's payment application to Principal.
>
> . . .
>
> 28. TOS did not exercise reasonable care or competence in determining or communicating the TOS Completion Percentages.
>
> 29. Principal justifiably relied on the false TOS Completion Percentages in evaluating and paying CCG the amounts claimed in its July 2024 payment application and its October 2024 payment application.
>
> 30. As a direct and proximate result of the false TOS Completion Percentages, Principal overpaid CCG for TOS's work on the Project, for which amount Surety sues TOS.

*ECF No. 9* at 12. Because TOS also does not adequately brief this issue, minimally addressing it, the Court cannot rule in its favor. The Court reviewed TOS's citation to *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 123 (5th Cir. 2019), presented without explanation, and in that case the Fifth Circuit found a negligent misrepresentation cause of action adequately plead. The Court finds the same here.

Accordingly, at this juncture, the Court finds Euler has sufficiently plead its cause of action against TOS for negligent misrepresentation. Thus, in this regard, TOS's Motion to Dismiss, (*ECF No. 18*), is also denied.

**CONCLUSION**

For the foregoing reasons, TOS's Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 18*), is **DENIED**.

It is so ORDERED.
SIGNED this 18th day of August, 2026.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE