**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**TEXAS ONE SOURCE INDUSTRIAL SOLUTIONS LLC, THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF TEXAS ONE SOURCE INDUSTRIAL SOLUTIONS, LLC;**

***Plaintiff*,**

**v.**

**EULER HERMES NORTH AMERICAN INSURANCE COMPANY,**

***Defendant*.**

**Case No. 5:25-CV-00832-JKP**

# MEMORANDUM OPINION AND ORDER

Before the Court is Third-Party Defendant ESA South Inc. ("ESA") and Counter-Defendant Euler Hermes North American Insurance Company's ("Euler") Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 37*). In the Motion, ESA and Euler move to dismiss Count II, a cause of action for fraudulent inducement, asserted by Citizen Contracting Group LLC ("CCG") against ESA in its Amended Third-Party Complaint Against ESA and Counterclaim Against Euler, (*ECF No. 35* at 10–17). CCG filed a Response, (*ECF No. 39*). The Motion is therefore ripe for ruling. Upon consideration, ESA and Euler's Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 37*), will be granted.

## BACKGROUND

### I. TOS's Original Complaint

The Court provides the following summary of this case's progression for context, beginning with Plaintiff Texas One Source Industrial Solutions LLC's ("TOS") Original Complaint. TOS alleges in its Original Complaint that:

> 5. This action arises under the Miller Act, 40 U.S.C. §§ 3131–3134, concerning labor and materials furnished for the improvement of a federal construction project known as the San Antonio, Texas Veterans Affairs Medical Center Electronic Health Record Modernization Project (the "Project"), located in San Antonio, Bexar County, Texas.
>
> 6. The United States, through the Department of Veterans Affairs, was the owner of the Project. ESA South, Inc. ("ESA South") served as the prime contractor on the Project and furnished a payment bond (Bond No. US3003695) pursuant to the Miller Act, issued by Euler Hermes [("Euler")] as surety.
>
> 7. ESA South entered into a subcontract agreement with Citizen Contracting Group, LLC ("CCG"), under which CCG was to perform certain portions of the work on the Project, including electrical scope work.
>
> 8. Texas One Source (["TOS")] entered into a subcontract agreement with CCG, making TOS a second-tier subcontractor on the Project. Under that agreement, TOS furnished labor, materials, and equipment for the electrical scope of work throughout the Project, including the ground floor, levels 1 through 7, and the data center.
>
> 9. TOS provided labor and materials in prosecution of the work as provided in its subcontract. TOS performed its work in good faith, and the materials acquired and/or furnished by TOS were intended for or otherwise incorporated into the Project.
>
> 10. On February 10, 2025, ESA South terminated the subcontract with CCG. As a direct consequence of that termination, TOS's subcontract with CCG was also effectively terminated, despite no fault or breach on the part of TOS.
>
> 11. At the time of this termination, TOS had submitted invoices for completed work and delivered materials that remained unpaid. In addition, TOS had placed purchase orders for long-lead electrical items intended for installation on the Project. These materials had been ordered in reliance on the approved Project scope and schedule. All of the materials were purchased for the direct prosecution of the work, and have been delivered to the site or have been suitably stored offsite.

> 12. The termination rendered the long-lead material orders the contractual responsibility of TOS despite not receiving payment for the materials. In an effort to mitigate its damages, TOS contacted ESA South about a potential agreement for ESA South to acquire the materials directly from TOS, including the long-lead materials and material orders that had been received and suitably stored off-site. ESA South declined to acquire the long-lead materials.
>
> 13. Consequently, TOS was left with materials intended for the Project under a subcontract that has been terminated through no fault of TOS. As a result, TOS incurred significant costs and fees, which are now included in the total balance owed under its Miller Act claim.
>
> 14. As of the date of this Complaint, TOS is owed **$1,710,679.40** for labor, materials, earned retainage, and costs.
>
> . . .
>
> 18. Despite repeated demands, no payment has been made. TOS seeks to recover from the payment bond the full amount owed for the work it performed and materials it supplied on the Project.

*ECF No. 1* at 2–5. Based on these allegations, TOS asserts a sole cause of action against Euler pursuant to provisions of the Miller Act, 40 U.S.C. §§ 3131–3134. *Id.* at 5–6. For reference, a visual representation of the relationships between the parties is depicted immediately below.




## II. Euler's Counterclaim

In response to TOS's Original Complaint, Counter-Plaintiff Euler Hermes North Ameri-

can Insurance Company ("Euler") filed its Counterclaim, (*ECF No. 9*). Euler alleges in its Counterclaim that:

> 13. Following CCG's termination, ESA South Inc. hired another subcontractor ("Replacement Subcontractor") to complete the CCG Scope. In connection with doing so, ESA South Inc. investigated the status of the CCG Scope, including the work performed by TOS under the TOS Agreement, to confirm the completion percentages stated by CCG in its payment applications to ESA South Inc., evaluate the quality and conformity of the work to Project plans and specifications, inventory the materials and equipment reported by CCG and/or TOS as located on the Project site, and, based on its investigation, develop a reasonable cost estimate for completing the unfinished CCG Scope.
>
> 14. ESA South Inc. determined that most of the work performed under the CCG Subcontract, mainly consisting of work performed by TOS under the TOS Agreement, was improperly installed, had damaged other work and/or in repairing or replacing the improperly installed work would require destruction or demolition of the work of other trades and, in general, did not conform to the requirements of the contract documents and Project plans and specifications. The VA, after conducting its own inspection of the CCG Scope, rejected most of the work as improper and/or non-conforming. ESA South Inc. estimates that 85% or more of the CCG Scope will have to be reworked or replaced. The estimated cost of reworking or replacing the CCG Scope – in addition to the cost of completing the unfinished portion – is over $1M.
>
> 15. In addition, through its investigation, ESA South Inc. discovered that CCG and TOS had exaggerated in their payment applications the percentage of the CCG Scope each had completed. Thus, not only was ESA South Inc. misled into paying CCG more than it was entitled to receive based on the actual – not represented – percentage of work completed, but also the cost of completing the CCG Scope was greater than ESA South Inc. had anticipated based on CCG's representations in the payment applications submitted to ESA South Inc.
>
> 16. The combination of improper and non-conforming work installed by CCG and TOS, misrepresentations made to ESA South Inc. about the percentage of the CCG Scope completed on the Project, maladministration and delays in performing the CCG Scope – by CCG under the CCG Subcontract and TOS under the TOS Agreement – have caused ESA South Inc. to incur substantial damages, including, without limitation, repair and replacement costs, increased completion costs, delay damages, and extended field and home office overhead that have adversely and financially impacted ESA South Inc.'s business operations.
>
> 17. ESA South Inc. will continue to incur damage caused by the acts and omissions of CCG and TOS until the Project is completed and accepted by the VA. Thus, as of the time of filing this Complaint, the full extent of the damage caused

> by CCG and TOS to ESA South Inc. on the Project cannot be known.

*ECF No. 9* at 9–10. Based on these allegations, Euler asserts a cause of action against Citizen Contracting Group ("CCG"), among other causes of action against other parties, for breach of contract. *Id*. at 11–12.

## III. CCG's Amended Third-Party Complaint Against ESA and Counterclaim Against Euler

Later, CCG filed its Third-Party Complaint against ESA South and, in response to Euler's Counterclaim, (*ECF No. 9*), CCG filed its own Counterclaim against Euler. *See ECF No. 35* at 10–17 (Amended Third-Party Complaint Against ESA and Counterclaim Against Euler). In this filing CCG alleges that:

> 58. After a significant review period of the scope of the project and in reliance on statements and representations made by ESA South, CCG entered into a written Subcontract with ESA South (the "CCG Subcontract") to perform specified scopes of work on the Project in exchange for compensation as set forth therein.
>
> 59. CCG subsequently entered into two Subcontractor Agreements with Texas One Source Industrial Solutions, LLC ("TOS") (collectively referred to as the "TOS Agreement") to perform a portion of CCG's work.
>
> 60. CCG and TOS performed their respective work diligently and in accordance with contract requirements. The majority of the CCG Scope was performed by TOS under CCG's supervision and contractual responsibility.
>
> 61. Throughout the course of performance, ESA South failed to provide contemporaneous jobsite feedback, photographs, punch lists, or inspection reports identifying any alleged deficiencies or providing CCG with an opportunity to cure or respond.
>
> 62. On or about February 10, 2025, ESA South wrongfully terminated CCG for alleged cause. CCG denies that any cause existed and asserts that the termination was pretextual, retaliatory, and motivated by improper financial and business considerations unrelated to performance.
>
> 63. As a result of ESA South's wrongful termination and breach of contractual duties, CCG has sustained significant damages, including unpaid contract balances, retainage, delay and demobilization costs, extended overhead, and reputational harm.

> 64. The Surety's claims against CCG are derivative of ESA South's conduct and are barred or reduced to the same extent that ESA South's own conduct constitutes breach of the CCG Subcontract.

*ECF No. 35* at 12–13. Based on these allegations, CCG asserts several causes of action including Count II, a cause of action for fraudulent inducement, against ESA. *Id*.

**IV. Instant Motion to Dismiss**

In the Motion, ESA and Euler move to dismiss Count II, a cause of action for fraudulent inducement, asserted by CCG against ESA in its Amended Third-Party Complaint Against ESA and Counterclaim Against Euler, (*ECF No. 35* at 10–17). CCG filed a Response, (*ECF No. 39*). The Motion is therefore ripe for ruling.

## LEGAL STANDARD

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

**ANALYSIS**

In the Motion, ESA and Euler[1] ("Movants") move to dismiss Count II, a cause of action for fraudulent inducement, asserted by CCG against ESA in its Amended Third-Party Complaint Against ESA and Counterclaim Against Euler, (*ECF No. 35* at 10–17). Movants first contend Count II does not meet the particularity requirement of Federal Rule of Civil Procedure 9(b). *ECF No. 37* at 8–9. Next, movants claim Count II is a "repackaged" breach of contract cause of action. *Id.* at 9–13.

---

[1] As described by ESA and Euler in the Motion:

> Count II appears to allege fraudulent inducement only against ESA. However, CCG's Amended Third-Party Complaint against ESA and its Amended Counterclaim ("Amended Pleading") against Surety are combined and allege claims against both ESA and Surety. Thus, the introductory paragraph states: "Third-Party Plaintiff and Counterclaimant, Citizen Contracting Group, LLC, files this Amended Third-Party Complaint against ESA South, Inc. and, to the extent applicable, this Counterclaim against its surety, Euler Hermes North America Insurance Company…" [ECF 35, p. 10]. In Paragraph 45 of the Amended Pleading, CCG asserts the fraudulent inducement claim alleged in Count II of the Amended Pleading as an affirmative defense to the breach of contract claim Surety has alleged against CCG as the assignee of ESA, the prime contractor on the subject construction project. Thus, as Count II is to this extent applicable to Surety, it joins with ESA in this Motion.

*ECF No. 37* at 2 n.1.

## I. Federal Rule of Civil Procedure 9(b)

The elements of fraud in Texas are:

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

*Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Fraudulent inducement "'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.'" *Bohnsack v. Varco, LP*, 668 F.3d 262, 277 (5th Cir. 2012) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)).

Fraud and fraudulent inducement causes of action are subject to Federal Rule of Civil Procedure 9(b)'s ("Rule 9(b)") heightened pleading requirement, which requires plaintiffs who allege fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This generally requires "the who, what, when, where, and how" to be laid out. *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997).

Regarding Count II, CCG alleges that:

> 68. In its dealings with CCG prior to entering into the CCG Subcontract and to induce CCG to agree to a contract which CCG would not have agreed to otherwise, ESA South made (1) material misrepresentations; (2) that it knew at the time were false or lacked knowledge of their truth; (3) that it intended CCG should rely or act on; (4) which CCG did in fact rely on and act on; and (5) CCG's reliance thereon caused it injury.
>
> 69. ESA South's fraudulent inducement of CCG arose from ESA South representing to CCG that:

a. The schedule for performance of CCG's work was substantially longer than what ESA South later unilaterally imposed on CCG which ostensibly was a ground for ESA South terminating CCG;

b. ESA South would, at its expense, provide CCG with adequate onsite staging or close offsite storage/staging all the while knowing they would not do so, ultimately resulting in CCG incurring unforeseen costs and delay in the delivery of its goods and services;

c. The bid documents presented to CCG prior to contracting were reliable when they in fact were not and which ESA later jettisoned and replaced with shop/design drawings and labelling which CCG would not have agreed to perform on the terms and consideration provided in the Subcontract;

d. The scope of work did not include certain fire alarm devices which ESA South ultimately required to be provided by CCG, unilaterally expanding the scope of work beyond that which it had previously represented to CCG;

e. As to providing a payment and performance bond, ESA South would work around CCG having to provide such a bond, but then, completely contrary to these statements, changed course claiming that the bond was required and as a pretext claimed the lack of a bond was a basis for terminating CCG from the contract;

f. ESA South would collaborate and work in good faith with CCG which later it failed to do particularly after resistance by CCG to ESA South's requests to partner with CCG in CCG jobs and relationships; and

g. Multiple other statements made prior to entering the CCG Subcontract all of which, combined with the foregoing, induced CCG to enter into the Subcontract and ultimately suffer damages.

70. ESA South's fraudulent conduct damaged CCG by the loss of the benefit of its bargain, out of pocket expense, along with incidental and consequential damages. Further, ESA South's representations, actions and omissions rise to the level of conduct for which exemplary damages may in the discretion of the fact finder be awarded pursuant to Section 41 of the Texas Civil Practice and Remedies Code for which CCG sues.

*ECF No. 35* at 13–15. With these allegations, the Court finds CCG fails to plead its fraudulent inducement cause of action with the requisite degree of particularity, as required by Rule 9(b).

The Fifth Circuit has affirmed dismissals of similar pleadings lacking particularity. For example, in *Elson v. Black*, the Fifth Circuit affirmed a district court's dismissal of a plaintiff's allegations that "suffer[ed] from a combination of defects, including a failure to plead adequately *what* representations were actually made, *when* those representations were made, *who* made the representations, and *where* those representations occurred." 56 F.4th 1002, 1009 (5th Cir. 2023) (emphasis in original).

To begin, CCG does not attribute any misrepresentations to any specific speaker, i.e. any ESA representative. Without pleading the specific representative speaking on its behalf, the Court finds the general allegation that ESA made misrepresentations insufficient for purposes of Rule 9(b).[2] Additionally, CCG "does not state a place or time that these representations were made," or how. *Williams*, 112 F.3d at 178. More fundamentally, with the exception of allegation "b."—regarding staging—CCG fails to allege ESA knew any representation was false when made. *See ECF No. 35* at 14 ("all the while knowing they would not do so"). Even analyzing allegation "b." it is devoid of any factual allegations that would support such an inference. *E.g.*, *Wesdem, L.L.C. v. Illinois Tool Works, Inc.*, 70 F.4th 285, 292 (5th Cir. 2023) ("While [plaintiff] alleges that the promise was false and that [defendant] knew it was false, these conclusory allegations are unadorned and devoid of further factual enhancement." (citations omitted)). There are no facts here which might suggest CCG's representations were false when made.

"As a result, the Court would have to make guesses to fill in the blanks, but 'Rule 9(b) does not allow the plaintiffs to force the defendants—or the Court—to make such assumptions.'"

[2] *E.g.*, *TM Boyce Feed and Grain, LLC v. nVenia, LLC*, 747 F. Supp. 3d 951, 967 (N.D. Tex. 2024); *Kelly L. Firm, P.C. v. An Att'y for You*, 679 F. Supp. 2d 755, 773 (S.D. Tex. 2009).

*Pease v. Securities & Exch. Comm'n*, 821 F. Supp. 3d 731, 749 (W.D. Tex. 2026) (citing *Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Dev., Inc.*, 972 F.3d 684, 694–95 (5th Cir. 2020)).

Accordingly, the Court finds CCG has insufficiently plead its cause of action against ESA for fraudulent inducement. Thus, in this regard, ESA and Euler's Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 37*), is granted.[3]

## II. Leave to Amend

In its Response to ESA and Euler's Motion to Dismiss, CCG requests in the alternative leave to amend. *ECF No. 39* at 13–15. In the body of its Response, CCG includes the proposed, supplemental allegations. *Id*.

The Court's *Standing Order in Civil Cases Assigned to Judge Jason Pulliam*, (*see ECF No. 2*), states "[t]o advance the case efficiently and minimize the cost of litigation, the Court will provide parties an opportunity to amend their pleadings once before considering a Federal Rule of 12(b)(6) Motion to Dismiss." "Under this practice, the Plaintiff has already been provided notice of the proposed deficiencies and the opportunity to amend the pleading prior to the filing of a Motion to Dismiss. Consequently, if the Court finds any Motion to Dismiss has merit, the Plaintiff shall not be allowed an additional opportunity to amend its Complaint following a properly filed Motion to Dismiss." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002))

On November 4, 2025, CCG filed its original Third-Party Complaint Against ESA and Counterclaim Against Euler, (*ECF No. 25* at 9–14). Later, on December 12, 2025, CCG filed its

[3] Because the Court determines CCG fails to state a claim for Count II, it need not reach ESA and Euler's additional claim Count II is a "repackaged" breach of contract cause of action.

Advisory of Intent to Amend. *ECF No. 34*. In CCG's Advisory of Intent to Amend, CCG stated that CCG, "pursuant to STANDING ORDER IN CIVIL CASES ASSIGNED TO JUDGE JASON PULLIAM (Doc. No. 2) paragraph 1, hereby advises this Court and the parties herein of CCG's intent to amend its pleading (Doc No. 25)." *Id.* at 2. On December 18, 2025, CCG then filed its Amended Third-Party Complaint Against ESA and Counterclaim Against Euler, (*ECF No. 35* at 10–17).

In response, on January 8, 2026, ESA and Euler filed the instant Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 37*). In the Certificate of Conference accompanying the Motion, ESA and Euler certify that:

> I have conferred with counsel for Citizen Contracting Group, LLC regarding the substance of this Motion to Dismiss ("Motion") and the defects that ESA and Surety believe exist in Count II. I advised him of this Court's Standing Order and the procedures prescribed therein. Counsel for CCG advised me that CCG is not willing to withdraw or dismiss Count II alleged in the Amended Third-Party Complaint and Amended Counterclaim. Accordingly, ESA and Surety hereby file this Motion seeking dismissal of Count II.

*Id*. at 14.

Accordingly, on this record, CCG has already been provided notice of the proposed deficiencies and the opportunity to amend its pleading prior to ESA and Euler's filing. Therefore, CCG's request for leave to amend is denied.

**CONCLUSION**

For the foregoing reasons, ESA and Euler's Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), (*ECF No. 37*), is **GRANTED**.

It is so ORDERED.
SIGNED this 18th day of August, 2026.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE